# CHARLESTON.

## VANCE v. KIRK.

Submitted January 21, 1887.—Decided February 5, 1887.

1. TRUSTS AND TRUSTEES—MISAPPLICATION OF FUND—SUIT FOR ACCOUNTING.

Where a trustee misapplies trust-funds by paying them to a person, who, he must know, is not entitled to receive them, and such person knows, that the trustee violates his trust in paying the funds to him, the *cestui que trust* may bring a suit in equity against the trustee alone to compel said trustee to account to him for the amount of misapplied funds, or he may, if he elect so to do, bring his suit in equity against both the trustee and the person, to whom the trustee improperly paid the funds, to compel them to account therefor. (p. 353.)

2. TRUSTS AND TRUSTEES—DECREE.

In such a case the decree should be first against the person, who has improperly received the funds, and if he can not refund them, there should be another decree against the trustee, who should be regarded as surety of the person, who has improperly received the funds. (p. 353.)

3. PARTNERSHIP—SUIT AGAINST AFTER DISSOLUTION.

When a firm has received money, and after its dissolution a chancery suit is brought against the persons, who were the members thereof to compel them to refund the money, it is not necessary, though it is usual and best, to describe these persons as lately doing business under a certain name and in the prayer of the bill to ask, that they may be made parties defendant. But if the bill fails to do so it is not on that account demurrable. (p. 354.)

4. TRUSTS AND TRUSTEES—APPELLATE COURT—OBJECTIONS.

Where a suit in chancery is brought against a trustee and a person, to whom he has improperly paid a portion of the trust-fund, to enforce the payment of a debt secured by a deed of trust, the suit being brought, after all the trust-property has been sold, and all of the proceeds have been paid out by the trustee, and there is no allegation of fraud in the pleading, and no question is in any manner raised as to the validity of the trust-deed in the court below, the appellate court can not inquire into its validity or declare the deed of trust void, though on its face there are provisions, which strongly indicate, that such deed of trust was fraudulent. (p. 360.)

Statement of case by GREEN. JUDGE :

At January rules, 1878, J. Nelson Vance and George Adams, late merchants and partners doing business under the name of Vance & Adams, filed their bill in the Circuit Court of Jackson county, in it alleging, that on January 12, 1876, Thomas Kirk owed them $280.00 for goods purchased of them, and that on that day he executed to M. C. Latham, trustee, a deed conveying all his goods, wares and merchandize and other personal property in his store in Ravenswood, in said county, amounting according to inventory made of them sixteen days before to $1,665.69 in value, and also all the accounts due to him, charged on his account-book in said store amounting to $418.19, in trust to secure said debt of $280.00 with interest from that date, and after the satisfaction of this debt to secure Eunice Kirk the following sums borrowed of her by said Thomas Kirk, to wit: " the sum of $1,380.10 borrowed by said Thomas Kirk of said Eunice Kirk in different sums and at different times from the 4th day of March, 1870, to the 15th day of February, 1873,—the sum of $500.00 on the 10th day of March, 1873,—the sum of $918.88 on the 13th day of January, 1873,—$533.00 on the 1st day of November, 1873,—$500.00 on the 1st day of April, 1874.—The

said deed of trust was duly acknowledged on the day and of the date thereof and was duly admitted to record in the clerk's office of the said county on the next day; and an attested copy was filed with the bill as a part thereof. The following are its provisions regarding the duty of the trustee in executing the trust:—

"It shall be the duty of said trustee to manage, control and conduct the store-business in a proper business-like manner, keeping exact accounts of all sales made by him, and also an account of sums paid for rent, fuel and other expenses, render a correct and full statement to the parties herein secured, showing the full amount of all sales and all sums paid for rent and fuel and the other expenses of said business; the first of which statement shall be made on the 1st day of March, 1876, and on the 1st day of every month thereafter until the sum of $280.00 first aforesaid be entirely discharged by applying 25% of the total amount of all the proceeds of the sale of said goods, wares and merchandise, and the additions thereto made by said trustee; and it shall be said trustee's duty to apply the residue of the proceeds of the said sales, after defraying all necessary expenses incurred in conducting said business, to the payment of the debts aforesaid due and owing to the said Eunice Kirk by the said Thomas Kirk; but the said Eunice Kirk may require said trustee to sell said goods at public auction at any time after giving notice of the time and place of sale as required by law, and in case the said Eunice Kirk shall require said trustee to sell said goods, then it shall be the duty of said trustee to first pay the claim of $280.00 owing to Vance and Adams, or so much thereof as may be owing at the time of said sale, and apply the residue to the payment of the claims due the said Eunice Kirk according to their priority; and said trustee shall have said goods and stocks insured by some reliable and responsible insurance company; and said trustee shall give bond, in the penalty of $300.00, to Vance & Adams, conditioned to perform his duties with regard to the provisions of this deed of trust in favor of the said Vance & Adams as provided therein; and said trustee shall have power to sue for and collect in the name of said Thomas Kirk the debts, claim and accounts aforesaid, and he shall show in the statement

aforesaid the amount of the said debts, claim and accounts collected during each month; said trustee shall pay the 25% of the amount of all sales as aforesaid to Vance & Adams at the time he makes each monthly statement—that is to say, the first installment on the 1st day of March, 1876, and an installment on the 1st day of every month thereafter until the claim be entirely paid."

The bill alleged, that the trustee did not render the monthly statements, provided for in the deed of trust, and did not pay to the plaintiffs twenty five *per cent.* of the proceeds of the sale made by him;—that he sold the whole stock of goods either at private sale or at public auction—most of them at public auction; but he had paid the plaintiffs, who were the first secured, only the following sums: $30.00 on May 5, 1876,—$20.00 on May 30, 1876,—and $67.15 on June 9, 1876;—that, if he has paid out the balance at all, he has done so improperly and has misapplied the same;—that out of the proceeds of said sales large sums of money have been paid to the defendants, Frank Jenkins, J. M. Jackson, Jr., and John V. Rathbone, Jr., partners doing business under the firm name of Jenkins, Jackson & Co., on claims, which said firm held against said Kirk, the grantor," which the plaintiffs charge was a misapplication of the funds arising from the sales of said stock of goods. The bill then concludes as follows:—

"Plaintiffs therefore pray that said trustee may be required to come into this court with an account of his proceedings and transactions as said trustee and disclose fully the amount of all moneys received by him on sales of goods and personal property of every description which came to his hands as such trustee, as well as the proceeds of collections on all debts, claims and accounts which came to his hand in same way, and that he be required to pay over any money arising as aforesaid yet remaining in his hands, and that the said Frank Jenkins, J. M. Jackson, Jr., and Jno. V. Rathbone, Jr., may be required to disclose the amount received by or either of them from said trustee, and that plaintiff may have a decree over against for whatever amount it may be made to appear was paid to them by said trustee which ought to have been paid to plaintiffs; and

grant such other, further and general relief in the premises as the nature of plaintiffs' case may require. And plaintiffs will ever pray, &c."

To this bill the defendants, Jenkins, Jackson and Rathbone, filed at February rules their demurrer, in which the following causes of demurrer are assigned: 1st, because under the bill the plaintiffs were entitled to no relief against these defendants in a court of equity;—2d, because the plaintiffs have against these defendants full relief at common-law;—3d, because the bill was multifarious;—and 4th because the allegations of the bill are too vague and uncertain to enable the court to intelligently pronounce a decree thereon. On September 18, 1878, the court overruled this demurrer; and on September 9th, 1879, these defendants filed their answer.

In the answer, which is argumentative in character, the only facts stated, which can be regarded as properly responsive to the allegations of the bill, are the following : That for a long time prior to January 12, 1876, they were partners doing business as Jenkins, Jackson & Co. in Parkersburg, and that during the year 1885 said Thomas Kirk became indebted to them and gave them two negotiable notes endorsed by Pedro, Petty & Bond, one of them for $300.00 dated August 27, 1875, and the other for $100.00 dated September 8, 1875 ;— that on the 18th of January, 1876, which was five days after this deed of trust was recorded, they sued on these two notes and accompanied their suit with an attachment issued against said Thomas Kirk. The ground, on which this attachment was issued, is not stated, nor is there anything in the answer, from which we can guess what it was, except perhaps this statement :—"At the time this suit was instituted, they sued out an attachment against the estate of Thomas Kirk for the sum of $312.44, being the sum then due, which said attachment was on the 18th of January, 1876, by one E. E. Starcher, then a constable of said county, duly levied on a part of the stock of goods mentioned in said trust-deed, some of which had been bought by Kirk of them;—that such proceedings were afterwards had in said suit and attachment, that on the 25th of March, 1876, they recovered judgment against Thomas Kirk and Pedro, Petty & Bond

for $317.12 with interest and costs, on which judgment execution immediately issued and went into the hands of the sheriff of said county to be executed."—They profess to file the entire record in said suit and attachment as a part of their answer. It shows substantially the facts stated above, except that the return of the constable of the levy of this attachment was upon "the property of the defendant, Thos. Kirk, embraced in the list annexed." This list was an inventory of goods and merchandise amounting in value to $497.66. There was nothing in the return nor in any part of this record calculated in any way to raise even a suspicion, that these goods and merchandise were any part of the goods conveyed by this deed of trust. Nor is there anything in the record in this attachment-case to show, that any such deed of trust existed. This record does not show, that any execution on this common-law-judgment was issued. The judgment was rendered on March 25, 1876, by the Circuit Court of Jackson county. The only order ever issued on this attachment case was the order of attachment itself. The affidavit, if any was ever made, as I presume there was, is not copied into the transcript of the record filed with the answer. The respondents in their answer further say:—"They can not now state the exact amount of money, which has been or was paid to them by said Latham on their said claim against Thomas Kirk; but that said judgment has been only partially paid." The most of this long answer consists of arguments and denials not of the facts but of legal conclusions, on which the plaintiffs had based their demand; and it is not deemed necessary to notice them. There is also a general denial of allegations of the bill not expressly admitted.

This answer was replied to generally; and no depositions were taken in the cause. The following decree was entered by the court on the 9th day of September, 1879:

" This day this cause came on to be further heard on the papers formerly read and the proceedings heretofore had, and upon the answer of Jenkins, Jackson & Co., and general replication thereto; and other defendants having failed to answer plaintiffs' bill, the court is of opinion that there are matters arising on said bill proper for reference; it is there-

fore adjudged, ordered and decreed that —— ——, one of the commissioners of this court, do take, state and report to this court an account showing—first, how much is due on the demand of plaintiffs mentioned in their bill; second, how much property, including merchandise, notes, accounts and claims, was placed in the hands of defendant, Latham, trustee, by defendant, Kirk, under the trust mentioned in the bill; third, what disposition the said Latham made of the said property; fourth, how much money was paid by the said Latham, trustee, to the defendants, Jenkins, Jackson & Co.; and any other matter deemed pertinent by himself or required by either party."

Commissioner Walker under this decree made a report, which was excepted to, and on August 19, 1881, it was by a consent-decree recommitted to said Walker, that further proof might be presented and heard, and that he might restate and correct the same. This he did, filing his report February 13, 1882, which was not excepted to by any of the parties. This report was as follows:

"Your commissioner, to whom was re-committed the former réport made in this cause on the 13th day of August, 1870, begs leave to offer the following: that due notice was given to all the parties in interest, stating that on the 27th day of January, 1883, I would proceed to restate the said account; that on the 28th of January, 1882, M. C. Latham, trustee, one of the defendants, appeared and filed a large number of receipts, &c., and gave his deposition to be used in the hearing of this cause, from which it appears that no bond was filed as required by said deed, and that he, the said trustee, turned over all the papers and accounts to his co-defendant, Thomas Kirk, as per order of Eunice Kirk herewith filed, and also filed with me receipts, &c., of moneys and orders paid by him for said Thomas and Eunice Kirk, amounting to the sum of six hundred and sixty five dollars and thirty eight cents, most of which said sum was paid by these orders.

"I further find that there was due the plaintiffs in this cause on their demand August 12th, 1880, the sum of . . . . . . . . . .  $211 56

That there went into the hands of said trustee according to the deed of trust in merchandise, notes and acct. amounting to the sum of. . . . . .  . .     . .    . . . . . . . .  . .   .    . . .  $2,136 27

" That the trustee paid the following amts. :

| | | |
|---|---|---|
| Browning & Co | 264 | 32 |
| Vance & Adams | 117 | 15 |
| Jenkins, Jackon & Co | 200 | 00 |
| Discount on note | 9 | 00 |
| Expenses of sale, clerk hire, &c | 40 | 00 |
| Sheff.'s costs in Browning & Co. suit | 5 | 85 |
| Store rent, R. T. Wetzel | 37 | 42 |
| Mrs. Kirk, amt., rec'pt and order | 91 | 64 |
| Commissioners, &c., on $709.03 at 5 pr. ct | 35 | 45 |
| | $800 | 83 |
| Paid by him upon the orders of said Kirk | 665 | 38 |
| By accts. and notes turned over to Thos. Kirk upon the order of Eunice Kirk | 470 | 34 |
| | $1,936 | 55 |
| M. C. Latham, trustee, paid to defendants, Jenkins, Jack- & Co | 200 | 00 |

" I find that the deficiency arises from the difference in invoiced goods and the prices realized from the auction sale made by order of Eunice Kirk, January 30th, 1882."

Among the receipts filed by Commissioner Walker with his report are three signed by Jenkins, Jackson & Co. for money paid to them by M. C. Latham, showing upon their face, that the money was paid by Latham as trustee aforesaid on their claims above described. These receipts bear date respectively: May 1, 1876, for $162.91,—May 23, 1876, for $20.00,—and June 2, 1876, for $17.00. The first of these receipts states, that the money is to be applied to the claim, " E. E. Starcher attached goods for in March, 1876, " thus identifying clearly the claim, on which Latham as trustee paid these sums. The deposition of Latham returned with this report states, that he sold the goods conveyed by the deed of trust under the direction of Thomas Kirk and Eunice Kirk, his wife, and under the direction and control of the attorneys representing the creditors of said party ; that they were sold under their orders at private or public sales ; and he faithfully accounted for and paid over every dollar of money, that came into his hands under said sales. "—He states, that they brought much less than the prices named in the invoice referred to in the deed of trust ; and he then says : —" he accounted for all the moneys that came to his hands

by paying expenses, rent, clerk-hire, &c., in the carrying out the wishes of Thomas Kirk and Eunice Kirk and the parties representing the creditors;—that whatever notes and accounts ever came to his hands were by him under orders of the creditors' counsel or some of them turned over to said Eunice Kirk." He further says, that $25.00 was paid to W. A. Parsons by the order of Eunice Kirk, and a bond was given to secure him by Parsons.—This is the substance of Latham's deposition. He was not cross-examined and said nothing of having paid anything to Jenkins, Jackson & Co., though he produced before the commissioner their receipts, and he said nothing of being authorized or directed to pay them anything. Nor does he state that he knew of any payments being made to them.

Thomas Kirk's death was suggested August 7, 1883, and the cause was revived against his administrator, F. R. Hasler, sheriff of Jackson county, who filed his answer simply denying all the allegations of the bill, and his answer was replied to generally. Nothing further was done in the cause till August 18, 1885, when the court reciting all, that had been done including the filing of said report of Walker on February 13, 1882, and the fact, that no exceptions were made to it, adjudged, "that the plaintiffs have not shown themselves entitled to any relief against the defendants, Jenkins, Jackson & Co.," and therefore the bill was dismissed as to them with costs against the plaintiffs. And all parties agreeing, that the payment by the trustee of $264.32 to Browning & Co. named in the commissioner's report was properly made, as they had obtained a judgment for that amount against Thomas Kirk prior to the execution of the deed of trust, the court expressed the opinion, that the plaintiffs had failed to show, that they were entitled to any relief against Latham, the trustee; and therefore the court dismissed the bill as to him but without costs to said Latham.

From this decree the plaintiffs have obtained an appeal and *supersedeas.*

*John R. Riley* for appellants.

*C. L. Brown* for appellees.

GREEN, JUDGE:

The first question to be decided in this cause is:—Should the court have sustained the demurrer to the plaintiffs' bill?

The special object of the bill was to compel Jenkins, Jackson and Rathbone, who, when the cause of action arose, were a partnership doing business under the name of Jenkins, Jackson & Co., to pay to the plaintiffs funds, which they had received from Latham, trustee, in a deed of trust duly recorded, which provided, that said funds should be paid to the plaintiffs. This appears on the face of the bill; and upon these allegations there can be no doubt, that Jenkins, Jackson and Rathbone were not necessary parties to the suit; and, if the plaintiffs had so elected, they might have brought the suit against the trustee and all the *cestuis que trust* and have obtained a decree for the debt against the trustee, because of his misapplication of the funds, which came into his hands, and out of which it was his duty to pay the plaintiffs' debt. But as the plaintiffs elected to follow the funds thus misapplied into the hands of those, to whom such funds had been paid, they had a right to make such persons also parties defendant and to obtain a decree against them for the funds, which they had received from the trustee. In such a case the plaintiffs had a right to a decree directing the parties, who had improperly received this fund, to pay it to the plaintiffs; and, if they were unable to meet this responsibility, the plaintiffs had a right to a decree against the trustee as security of the parties, to whom he had improperly paid the fund, which should have been applied to the plaintiffs' debt. That this is the law clearly appears from Story's Eq. Pl., § 221, which is as follows:—"If a trustee has fraudulently or improperly parted with the trust-property, the *cestui que trust* may proceed against the trustee alone to compel satisfaction for the breach of trust, or he may at his election join the assignee also, if he was a party to the fraud, or *if he seeks redress from him.*" This proposition of law is supported by the case of *Bank* v. *Pollock*, 4 Edw'ds Ch'y 215, the syllabus of which is as follows:—

"Where a bill charges, that shares of stock have by fraudulent conduct of one person got into the possession of two,

the latter may be proceeded against in one suit, though each holds a distinct number of shares; and it is also right to make the wrong-doing person a party.

"A clerk of a bank through fraud using the borrowed checks of a firm, whose account (in that way overdrawn) was more particularly under his own supervision, withdrew money from the bank and bought stock with it and caused such stock to be placed in the name of his sisters without consideration—HELD, that the sisters were to be construed as trustees for the bank defrauded."

The sisters in that case were not participants in the fraud. The Vice-Chancellor says:—"I consider this case falls within the principle laid down by Mr. Justice Story in 2 Eq. Jur. 513, § 1,258. The identity of the property is shown and traced; and under such circumstances, as it can be laid hold of by a court of equity and distinguished from the property of all other persons and handed over to the equitable and rightful owner. (*Thompson* v. *Perkins*, 3 Mason 322 and cases there cited)."

Point 2 of the syllabus in *Bailey* v. *Inglee et al.*, 2 Paige Ch'y 278, is as follows:—"A defendant may in some cases be a proper party to a suit, although he is not a necessary party, as in the case of a fraudulent assignment of a trust fund, where the *cestui que trust* may at his election either proceed against the trustee alone or may join the fraudulent assignee in the same bill."

In *Burnet* v. *Dennett*, 2 Brown Ch'y R., it was decided, that in "a bill against a trustee, who has assigned his trust, the assignee ought to be made a party, as the decree should be first against him, the trustee to stand as security." This conclusion is approved by Judge Story in his Eq. Pl., § 155.

It seems to me therefore, that in this case Jenkins, Jackson and Rathbone, late partners under the name of Jenkins, Jackson & Co., were proper parties defendant to this bill. But it is claimed, that they were not so made parties, as in the bill the prayer is, that Jenkins, Jackson and Rathbone be made parties defendant, that is, that they be individually made defendants. But they would have been made individually defendants, if the prayer had been that Jenkins, Jackson and Rathbone, late partners as Jenkins,

Jackson & Co.; for they were individually responsible, if the funds were, as alleged in the bill, even improperly received from the trustee by the said firm on claims, which it held against the grantor in the deed of trust. It surely is a mere technicality to say, that, though the bill in one part states, that these persons, when they received this money, were partners under the said firm name, yet, because in the prayer of the bill they were not said to be late partners, the bill was fatally defective. To sustain this position assumed for the first time in this Court, counsel rely on a note in Sands's Suit in Equity, page 25:—" If among the defendants there be any one, who fills several characters and is a proper party in each character, care must be taken to make him a party in each. When, for example, a devisee of the equity of redemption ought to be a party, though he be a defendant in the *character of executor* and answer as such, that will not be sufficient; he must be a party called upon to answer as to his individual interest. (*Mayo* v. *Tomkins*, 6 Munf. 520). In a bill brought by a residuary legatee against an executor, if the executor be administrator of one of the residuary legatees, he should be made a defendant as administrator of such legatee as well as in his character of executor. (*Stephens* v. *Starke*, 3 Munf. 29). And a decree can not be made against a widow to restrain her from conveying her right of dower, if she be not made a defendant to the bill as widow or in her own right but merely as administratrix of the decedent and guardian of his children (*Pennington* v. *Hanby*, 4 Munf. 144)." There can be no question that Sands lays down the law correctly in this note. But the addition to the individual names of the members of the old firm of the words—" late partners doing business under the firm name of Jenkins, Jackson & Co." would not *indicate* the *character*, in which they would be sued, but would only be a *descriptio personis* very proper to be added, but not at all essential. It was obviously so regarded in the court below; for in the decrees of the court this description of these persons was constantly added. It is unnecessary to consider separately each of the four grounds of demurrer, as they are obviously based on false views of the law or have been shown, by

what we have already said, to be without foundation. The court therefore did not err in overruling the demurrer.

The commissioner's report set out in the statement of the case not being excepted to, though it was returned to the court more than three years before it was acted upon by the court, must be held to be true. The case was referred to a commissioner twice to ascertain how much was due to the plaintiffs on the debt secured by the deed of trust and declared to have priority over all other debts;—what was the value of the property, which came into the hands of the trustee, what disposition he made of it, and how much money he paid to Jenkins, Jackson Co. His first report was unsatisfactory, and the cause was re-committed to him for a new report, which was made and was entirely satisfactory to all parties. From this report it appears, that the trustee came into possession of property, which, when estimated by the prices, at which he sold it, not by the valuation put upon it in the inventory made before the sale, was worth $1,936.55. Of this with the assent of all parties there was to be paid to Browning & Co. $264.32, and that amount was actually paid. This would leave in the hands of the trustee $1,672.23, out of which he should have first paid the amount due to the plaintiffs, which was, as stated in the deed of trust, $280.00 with interest from January 12, 1876; but instead of paying them this sum he paid them only $117.15, leaving a balance, which on August 12, 1880, according to the commissioner's report amounted to $211.56, which on May 1, 1876, must have been about $168.00. Instead of paying this $168.00 to the plaintiffs the trustee paid, as the commissioner's report shows, to Jenkins, Jackson & Co. $162.91 on a debt due from Kirk to them. They certainly had no pretence of a lien on the trust-property or on any property of Kirk's prior to January 18, 1876; for they brought no suit and issued no attachment on their claim till that day, which was six days after the recording of the deed of trust.

There was no question, that this payment to Jenkins, Jackson & Co. as well as the subsequent payment of $120.00 to the same parties made on the 23d of May, 1876, was a breach of trust, and that they knew it to be a breach of

trust, and that out of the money so wrongfully paid by the trustee the balance of the debt due to the plaintiffs could and should have been paid. So that upon the principles, we have laid down, the balance of the debt due to the plaintiffs should in this suit have been decreed to be paid to them by the members of the late firm of Jenkins, Jackson & Co.—that is, according to the commissioner's report, $211.56 with interest thereon from August 12, 1880.

The two receipts above referred to filed with the commissioners, when taken in connection with the date of the attachment issued by Jenkins, Jackson & Co., show beyond controversy, that the payment of each of the sums, for which they were given, was a breach of trust by the trustee, and that Jenkins, Jackson & Co., at the time they received the money, knew that the payment of it was a breach of trust. To show this I here give a copy of these two receipts :

" RAVENSWOOD, May 1st, 1876.

" Rec'd of M. C. Latham, trustee of Mrs. E. Kirk, assignee of T. Kirk, one hundred and sixty two dollars and ninety one cents, to be applied on claim in the hands of R. S. Brown and H. C. Flesher for collection, being the same claim E. E. Starcher attached goods for March, 1876.

" JENKINS, JACKSON & Co."

" PARKERSBURG, W. VA, May 23, '76.

" Rec'd of M. C. Latham, trustee of Thos. Kirk, twenty dollars, which is to be applied on our claim against said Kirk in Brown's and Flesher's hands for collection.

"$20.00                        JENKINS, JACKSON & Co."

To escape the inevitable consequences of the wrongful receipt of this money, the members of the late firm of Jenkins, Jackson & Co. in their answer say :—" They did not know of this deed of trust till long after its execution."—The receipts show on their face that Jenkins, Jackson & Co. knew of the deed of trust, when they received the money, and that was long after the deed of trust was recorded. These receipts also contradict the statement in the answer, that "the sums so paid them by said Latham were received by them in good faith on their just claim and demand against

said Thomas Kirk," and the further statement in said answer, "that each and every of the sums paid by said Latham to them was paid by him on said judgment *bona fide* under a claim of right by them under and by virtue of said attachment and judgment."—Both parties knew, that this attachment was issued and the judgment was obtained some time after the recording of this deed of trust, which imposed on the trustee the duty to pay to the plaintiffs the identical money, which he paid to Jenkins, Jackson & Co. This payment could not have been made nor received *bona fide* by either party. So far as the record shows, there was no allegation ever made by any one, that this deed of trust was fraudulent. And if it was fraudulent, the trustee could not in good faith accept the trust and then violate his duty under it.

The appellees' counsel in their argument endeavor to escape from the conclusions, which I have reached, by two arguments, which do not consist. One of these arguments is, that the plaintiffs seeing that Jenkins, Jackson & Co. had attached a part of this stock of goods conveyed by said deed of trust, assented expressly or tacitly to the application by the trustee of a part of the proceeds of the sale of the goods to their attachment-debt, thus waiving the preference they had before claimed under the deed of trust. There is nothing whatever in the record to sustain such a view. In their answer the members of the late firm of Jenkins, Jackson & Co. do not pretend, that such was the case. On the contrary they simply claim, that they received, and the trustee paid them, this money *bona fide;* but they do not say, that it was paid to them with the express or tacit agreement of any of the *cestuis que trust.* The trustee files no answer setting up such a pretence; and no deposition is taken in the cause to prove such a fact. When the commissioner was issuing an order simply to ascertain what property had been received by the trustee, and what disposition he had made of it, and how much money he had paid Jenkins, Jackson & Co., the trustee appeared and gave his deposition, no one else being present, in which he made some vague statements about his having accounted for all the money, which came into his hands by paying expenses, (rent, clerk-hire, &c.,) in carrying out the wishes of the

grantor in the deed of trust and of one of the *cestuis que trust* and of the parties representing the creditors. From such loose statements the appellees' counsel would have us infer, that the plaintiffs approved of the payments made to Jenkins, Jackson & Co., though the trustee in this deposition says not a word about having paid them anything and does not even mention their names nor the names of the plaintiffs.

I have stated the substance of this deposition in my statement of the case; and there is nothing in it, from which an inference can be drawn, that Latham designed to make any such allegation; and, if he had made such an allegation, it would have been a matter of no importance, as the statement would have been made not in a deposition taken in the cause on notice but on an inquiry before the commissioner, which was altogether foreign to an inquiry, whether or not this money had been properly paid to Jenkins, Jackson & Co. The fact that they issued an attachment and had it levied. on some goods of Kirk's, which they say but do not prove were a part of the stock of goods conveyed in this deed of trust, if it were true, would be very poor evidence, that they had good grounds for such attachment. As it appears, that the constable never took possession of these goods, but on the contrary permitted them to remain in the hands of the trustee, who went on and sold them as trustee, while Jenkins, Jackson & Co. took no steps to prevent it but permitted all these goods levied on by the constable under their attachment to be sold, and never obtained any order of sale in their attachment-case nor in fact any other order than the order issuing the attachment, it seems to me, the fair inference is, that this attachment issued for a cause, which does not appear, the affidavit, on. which it was based, not being in the record, was abandoned, because Jenkins, Jackson & Co. thought, it could not be sustained. But it is immaterial, whether it was abandoned or not. There is certainly no evidence, that any compromise was made between the *cestuis que trust* and Jenkins, Jackson & Co.—nor are there any allegations in the pleadings nor proofs in the evidence, upon which it is possible to assume, that there was any such compromise.

The other position assumed in this Court by the counsel for Jenkins, Jackson & Co. is, that this Court ought to hold as fraudulent and void the deed of trust, under which the appellants claim. But we must decline to enter into any such inquiry. There was no allegation made in the court below, that the deed of trust was fraudulent and void. Most of the grounds, upon which allegations of fraud are now made, arise out of the fact, that Eunice Kirk was the wife of the grantor and the largest beneficiary in the trust ; but it does not appear on the face of the deed of trust, that she was his wife, and no one reading the bill and answers and all the proceedings in the case would ever imagine, she was his wife, and it only incidently appears in the cause four years after the institution of the suit by witness Latham speaking of her as the wife of the grantor. In the mean time, before it was even thus incidently made known, all the property conveyed by the deed of trust had been sold, and all the proceeds of the sale had been disposed of and paid out by the trustee. Of course this Court can not of its own accord undertake to consider the question, whether the deed of trust was fraudulent and void, it having been regarded by all the appellees, so far as the record shows, as not fraudulent and void. No suggestion, that it was fraudulent had ever been made. The suggestion was first made in the argument of counsel in this Court. Such an inquiry would be utterly foreign to the case before us, as made by the pleadings. We might infer from Commissioner Walker's report, that perhaps to some small extent Eunice Kirk may have been injured by the improper payment of $200.00 to Jenkins, Jackson & Co. by the trustee; but as this sum very little exceeded what the trustee failed to pay to the plaintiffs, who were to be paid before she was paid anything, it is obvious, that very little would be due to her on a settlement of the accounts of the trustee, he having paid over to her every thing he received after paying the prior claim of the expenses of executing the trust, except what was paid Jenkins, Jackson & Co. She has filed no answer and, so far as appears to us, does not set up any claim against either the trustee or any of the members of the firm of Jenkins, Jackson & Co. It would not therefore seem to be right

for this Court to continue the cause on the docket of the court below with a view merely of entering into an inquiry as to rights or supposed rights of hers, which she does not assert.

For these reasons I am of opinion, that the decree of the Circuit Court of August 18, 1885, should be set aside, reversed and annulled; and the appellants should recover of the appellees, Frank Jenkins, J. M. Jackson, Jr., and John V. Rathbone and Mathew C. Latham, their costs in this Court expended; and this Court proceeding to render such decree, as the court below should have rendered, must adjudge, that the said Frank Jenkins, J. M. Jackson, Jr., and John V. Rathbone, late partners doing business under the name and firm of Jenkins, Jackson & Company, do pay to J. Nelson Vance and George Adams, late partners doing business under the name and firm of Vance & Adams, $211.56, with interest thereon from August 12, 1880, till paid; and that this cause be remanded to the Circuit Court of Jackson county to be retained on the docket of that court, till the sum above decreed and said costs shall be made out of said parties, or till it is ascertained, that it can not be made; and when the same shall be made, the court below will enter a final decree in said cause adjudging, that the costs of this suit in said Circuit Court be paid by said Frank Jenkins, J. M. Jackson and John V. Rathbone, late partners doing business under the name and firm of Jenkins, Jackson & Co., and by Mathew C. Latham. But if the whole of said sum of $211.56 with the interest thereon from August 12, 1880, can not be made out of the above parties, against whom it is decreed, then whatever part of said sum can not be made out of them, must be decreed against Matthew C. Latham as their security; and the costs of this suit in the Circuit Court in such case must be decreed in the manner above mentioned.

REVERSED.   REMANDED.