HUMES v. UNITED STATES (two cases).

(Circuit Court of Appeals, Eighth Circuit. October 12, 1910.)

Nos. 3,329, 3,330.

1. CRIMINAL LAW (§§ 1059, 1129*)—APPEAL AND ERROR—SUFFICIENCY OF REC-
ORD.

A federal appellate court may consider a case in which the personal
liberty of the defendant is involved, notwithstanding the insufficiency of
the exceptions taken or the assignment of errors.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. §§ 1059, 1129.*]

2. POST OFFICE (§ 35*)—USE OF MAILS TO DEFRAUD—ELEMENTS OF OFFENSE.

The offense denounced by Rev. St. § 5480 (U. S. Comp. St. 1901, p. 3696),
consists in the devising of a fraudulent scheme and the depositing in the
mail of a letter, writing, or other paper for executing or attempting to
execute such scheme. When such acts are shown, the crime is established,
and, while what is actually accomplished may be evidence of what was
intended to be accomplished, it is not the sole evidence. The offense is
complete if an attempt be made to execute by the use of the postal estab-
lishment.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. § 55; Dec. Dig.
§ 35.*]

3. CRIMINAL LAW (§ 1059*)—EXCEPTIONS TO INSTRUCTIONS—SUFFICIENCY.

Where the instruction of the court on a particular subject is specific
and states but one legal proposition, a general exception to the charge
on that subject is sufficient.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1059.*]

4. CRIMINAL LAW (§ 776*)—INSTRUCTIONS—EFFECT OF GOOD CHARACTER.

In a criminal prosecution for alleged fraudulent use of the mails, in
which defendant introduced evidence of his good reputation, the giving
of an instruction that, if defendant had a good reputation, "it only ac-
centuates the measure of his responsibility," and only enabled him the
better to impose upon others, was error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1838–1845;
Dec. Dig. § 776.*]

In Error to the District Court of the United States for the Western
District of Missouri.

John C. Humes was convicted on two indictments for violating pro-
visions of section 5480, Rev. St. 1878 (U. S. Comp. St. 1901, p. 3696),
which were brought on for trial under an order of consolidation. Ver-
dicts of guilty were rendered and judgments entered accordingly. To
reverse these judgments the present writs of error are prosecuted. Re-
versed.

Frank Hagerman and Albert S. Marley (John C. Grover and Walter
L. Vieregg, on the brief), for plaintiff in error.

A. S. Van Valkenburgh, for the United States.

Before SANBORN and ADAMS, Circuit Judges, and REED, Dis-
trict Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ADAMS, Circuit Judge. A fundamental question in this case is whether there was a fatal variance between the charge as made and the proof as produced.

It is quite doubtful if there is a sufficient exception or assignment of error to compel consideration of this question; but, as it is vital to the defendant in a case in which personal liberty is involved, we are disposed, under the authority of Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289, Clyatt v. United States, 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726, and Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 L. Ed. 465, not to pass it by.

Two specific fraudulent schemes were alleged to have been devised by Humes. One was to defraud W. S. George and the East Palestine Pottery Company, a corporation of which George was president, by falsely pretending in various statements and communications, not important now to be stated, that the business of the John C. Humes Crockery Company, a corporation of which Humes was president and owner of most of its stock, was in a highly prosperous condition, with the intent and purpose thereby "to induce the said W. S. George and the said East Palestine Pottery Company to purchase stock in said John C. Humes Crockery Company, and to pay the purchase price thereof over to him, the said John C. Humes; and that he, the said John C. Humes, should convert the moneys so paid to him to the personal use and benefit of him, the said John C. Humes, without rendering to the said W. S. George or the said East Palestine Pottery Company any good and valuable equivalent therefor."

The other scheme was to defraud one Hugh M. Jenkinson by making like false pretensions with the like intent and purpose thereby to induce him to purchase stock in the crockery company and pay the purchase price to Humes in order that he might convert it to his own use.

The foregoing are the only charges contained in the two indictments. The defendant's purpose was not charged broadly, as is usual in cases of this kind, to defraud divers persons mentioned or divers persons unknown to the grand jurors, but his fraudulent scheme, as pleaded, was narrowly limited to designs against one corporation in one case and one individual in the other. In view of this limited scope of the schemes, counsel for Humes contend that there was a fatal variance between the allegation and proof. They invoke the familiar rule that without proof of the scheme substantially as alleged no conviction can be had (Brown v. United States, 76 C. C. A. 577, 146 Fed. 219; Beck v. United States, 76 C. C. A. 417, 145 Fed. 625; O'Neil v. United States, 56 C. C. A. 584, 120 Fed. 236), and urge that the proof shows, if any fraudulent scheme was devised by Humes, it was merely to induce the pottery company and Jenkinson to accept shares of stock of the crockery company in satisfaction of their claims against that company and fails to show that it was to induce these persons to purchase stock and pay cash therefor to Humes in order that he might convert it to his own use, as charged in the indictments.

The proof shows conclusively that the fraudulent scheme, if any existed, resulted, so far as it was actually executed in the pottery company case, only in inducing that company to take 50 shares of the capital stock

of the crockery company in satisfaction of an existing debt or at its option to return the stock after the lapse of a year at par to Humes; and, so far as executed in the Jenkinson case, in inducing him to accept 30 shares of that capital stock in satisfaction of certain claims which he had against the crockery company, a small amount of money only being paid by him to even up the transaction.

If this constituted all the proof, there would undoubtedly be a fatal variance. A state of facts would be shown substantially different from that averred in the indictments.

But the schemes as actually executed, while they may be evidence of the real intention, or of what was actually devised, are not what is specifically denounced by section 5480 (U. S. Comp. St. 1901, p. 3696). The purpose of that section is not merely to punish the perpetrators of executed schemes who may have employed the postal establishment of the United States in carrying them out, but to thwart such fraudulent schemes before they reach fruition.

The language of the act is:

"If any person having devised or intending to devise any scheme or artifice to defraud * * * to be effected by either opening or intending to open correspondence or communication with any person, * * * by means of the post office establishment of the United States, * * * shall, in and for executing such scheme or artifice or attempting so to do, place or cause to be placed, any letter, packet, writing, circular, pamphlet, or advertisement in any post office * * * to be sent or delivered by the said post office establishment, or shall take or receive any such therefrom, such person so misusing the post office establishment shall, upon conviction, be punishable" as prescribed.

It is thus seen, the crime is complete when the fraudulent scheme, involving the elements specified in the statute, has been actually devised and when in executing or attempting to execute it a letter or other writing or paper has been actually deposited in the post office for transmission to its addressee. What is actually accomplished may be evidence of what was intended to be accomplished, but it is not the sole evidence. A person devising a fraudulent scheme may have contemplated doing things which were ultimately found impossible of execution. Nevertheless an effort to execute it by the use of the postal establishment, without more, constitutes an offense against the statute.

The proof of what was actually accomplished considered by itself would not sustain the specific charge made in either of the indictments in this case; but we find on a careful perusal of the record that Humes' original purpose contemplated more than was ultimately accomplished by him. There is substantial evidence tending to show that his original design was not limited to disposing of stock enough to the pottery company or to Jenkinson to satisfy their demands against his company, but comprehended the purpose of disposing of substantial amounts to be paid for in cash. This evidence, with the representations made by Humes concerning the value of his property and the success of his business, together with the proof as made concerning the intended and actual use of the postal establishment of the United States, constituted sufficient evidence of the charge as made in the indictments to take the case to the jury, and the contention that there was a fatal variance is not sustained.

Several assignments of error are predicated upon comments of the learned district judge in the progress of the trial, upon phases of his charge to the jury and upon his action in admitting and rejecting testimony; but as the case must be remanded for a further trial for reasons presently to appear, and as the assignments referred to raise no novel question of law or practice and may not again be necessitated, it is not deemed important to consider them now.

During the progress of the trial the defendant introduced evidence of his good reputation for truth, veracity, honesty, and integrity, and on this subject the learned trial judge charged the jury as follows:

"The defendant has put in evidence his good character for truth, veracity, and honesty. For reasons satisfactory, I presume, to defendant's counsel, he selected as the period for that the first of January, 1908, and not later. The letter in question in the East Palestine case was written after that time, on January 4, 1908. Conceding that he did have a good reputation at the time of these transactions, and that he was regarded as a man of truth and veracity, it only accentuates the measure of his responsibility. A man who has a good reputation, as a business man and citizen, is more apt to have weight and credence attached to his statements than a man who is disreputable, a man who is unsavory. If he was a man of such business reputation and character as he claims, he could expect when he made statements in his letters they would be credited by the parties; and, if they were untrue, it doesn't lessen his responsibility or accountability therefor."

At the conclusion of this charge defendant's counsel took the following exception:

"I also desire to save an exception to the charge of the court given as to the effect of the defendant's good character."

Counsel for the government contends that the exception was not sufficiently specific. All that was said by the learned trial judge on the subject of "reputation" or "character," which appear to have been used interchangeably, occupied a very little space and consisted practically of but one legal proposition, namely, that the possession of a good reputation by a person charged with crime "only accentuates the measure of his responsibility" and enables him the better to impose upon others. This expression of view is so strikingly out of harmony with the accepted law governing the value of personal character in criminal trials that an exception in general terms like those employed could not have been misunderstood by the trial judge. It pointed unerringly to the vice complained of. Under authority of the case of E. J. Pritchett et al. v. Samuel Sullivan (C. C. A.) 182 Fed. 480, just decided, and cases therein cited, the exception as taken was sufficient.

As to the merits of this assignment little need be said. It is now the settled law in this country that good character of a person accused of crime may be shown in all criminal trials, whether the other evidence leaves the mind in doubt or not; and when it is established it becomes a fact in the case to be considered with all other facts in determining the final issue of guilt or innocence of the accused.

In Edgington v. United States, 164 U. S. 361, 17 Sup. Ct. 72, 41 L. Ed. 467, it is said:

"The decided weight of authority now is that good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt. The circumstances may be such that an established reputa-

tion for good character, if it is relevant to the issue, would alone create a reasonable doubt, although without it the other evidence would be convincing."

In Jupitz v. People, 34 Ill. 516, cited with approbation by the Supreme Court in the Edgington Case, it is said:

"Proof of uniform good character should raise a doubt of guilty knowledge, and the prisoner would be entitled to the benefit of that doubt. * * * If the court had told the jury that his good character should be taken into consideration by them, and was entitled to much weight, a reasonable doubt of the prisoner's guilt might have been raised which would have resulted in his acquittal."

In Commonwealth v. Cleary, 135 Pa. 64, 84, 19 Atl. 1017, 1018 (8 L. R. A. 301), the Supreme Court of that state said:

"The rule deducible from the authorities may be briefly stated thus: Evidence of good character is always admissible for the defendant in a criminal case. It is to be weighed and considered in connection with all the other evidence in the cause. It may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. * * * The evidence of good character is to be considered with the other evidence in the case, and, if it all combined creates a reasonable doubt the defendant is entitled to an acquittal."

See, to the same effect, Baker v. State, 53 N. J. Law, 45, 47, 20 Atl. 858.

The learned trial judge, instead of giving the defendant the advantage to which good character, if established, entitled him, advised the jury in effect that it was a positive disadvantage to him. Instead of advising them that good character should be considered in connection with all the other evidence in determining the ultimate issue of defendant's guilt or innocence, he in effect told them that the possession of good character would aid him in perpetrating the fraudulent scheme with which he was charged. In this way he turned what the law makes a shield, into a sword. This was clearly error of a prejudicial kind and necessitates a reversal of the judgment.

It is so ordered.