GILLETTE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. September 4, 1916.)

No. 4563.

1. Prostitution ⟨⟩1—White Slave Act—"Debauchery"—"Engage in Practice of Debauchery."

Act June 25, 1910, c. 395, § 3, 36 Stat. 825 (Comp. St. 1913, § 8814), declares that any person who shall knowingly persuade, induce, entice, or cause to be persuaded, induced, or enticed, any woman or girl to go from one state to another in interstate or foreign commerce, for the purpose of debauchery, or for any other immoral purpose, or with the intent and purpose that such female shall "engage in the practice of debauchery," or any other immoral practice, shall be punished. Held, that two distinct offenses are charged, one mere sporadic immorality, or "debauchery," which word, while including all kinds of excessive indulgences in sensual

pleasures, is in the statute restricted to sexual immorality, and the other the practice of, or habitual indulgence in, such offenses.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. ☜1.]

2. CRIMINAL LAW ☜1036(8)—APPEAL—SUFFICIENCY OF EVIDENCE.

It is an unsafe practice to rely on the appellate court to consider a question not decided below, and a conviction will be not reversed on appeal for the insufficiency of the evidence, where that question was not raised below, unless necessary to prevent a failure of justice.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2641; Dec. Dig. ☜1036(8).]

3. PROSTITUTION ☜1—WHITE SLAVE ACT—EVIDENCE.

Under an indictment charging the offense of inducing a female to go in interstate commerce from one state to another with the intent that such female shall engage in the *practice* of debauchery and illicit sexual relations, it was no offense for accused, who had already invited prosecutrix to dinner, to have her come from Fargo, N. D., to Moorhead, Minn., for dinner, being in Moorhead on other business, though they became intoxicated in Moorhead, and on return to Fargo had sexual intercourse.

[Ed. Note.—For other cases, see Prostitution, Cent. Dig. §§ 1, 2; Dec. Dig. ☜1.]

In Error to the District Court of the United States for the District of North Dakota; Charles F. Amidon, Judge.

Arthur Gillette was convicted of unlawfully, knowingly, and willfully inducing and enticing a girl to go from one state to another for the purpose of debauchery, and he brings error. Reversed, and new trial ordered.

George A. Bangs, of Grand Forks, N. D. (George R. Robbins, of Grand Forks, N. D., on the brief), for plaintiff in error.

Melvin A. Hildreth, U. S. Atty., of Fargo, N. D. (John Carmody, Asst. U. S. Atty., of Hillsboro, N. D., on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges, and MUNGER, District Judge.

CARLAND, Circuit Judge. Gillette was convicted and sentenced to the penitentiary upon an indictment charging the following offense:

"Did unlawfully, knowingly, and willfully induce and entice, and cause to be persuaded, induced and enticed, a certain girl, to wit, one ———, to go from the city of Fargo, in the state of North Dakota, to the city of Moorhead, in the state of Minnesota, by, over, and upon the line of the Fargo-Moorhead Street Railway Company, for the purpose of debauchery and for an immoral purpose, to wit, that the aforesaid ——— should engage in the practice of debauchery and illicit sexual relations with the said Arthur Gillette, and the said Arthur Gillette did then and there in furtherance of said purpose cause and aid and assist in causing said ——— to go and to be carried as a passenger over the line of the Fargo-Moorhead Street Railway Company, which was then and there a corporation engaged in the business of a common carrier of passengers in interstate commerce between the state of North Dakota and the state of Minnesota."

The evidence at the trial, taken in its most unfavorable aspect against Gillette, was substantially as follows: The girl at the time of the alleged offense was in her nineteenth year. She was living with her

mother, sister, and two brothers at Galesburg, N. D. On February 3, 1914, Gillette asked the girl to go with him to Fargo, N. D., and she consented. Gillette gave her $1.50 with which to pay her fare. They arrived at Fargo the same evening, and both registered at the same hotel, but occupied separate rooms. They attended the theater in the evening; came back to the hotel about 11 o'clock p. m. Gillette wanted to go to the girl's room, but she refused him this privilege. Gillette had offered the girl money at Galesburg as the price of sexual intercourse. On the morning of February 4, 1914, Gillette left the hotel after inviting the girl to dine with him in the evening. Nothing was said as to where they would dine.

About noon of the same day Gillette met the state's attorney of Traill county, N. D., at the Great Northern depot in Fargo, and went with him to the Comstock Hotel in Moorhead, Minn. Gillette at this time was in the employ of the state's attorney as a detective for the specific purpose of investigating the character of the house where the girl lived in Galesburg. The alleged reason for going to Moorhead was that their consultation would be more private. At about 5 o'clock of the day in question Gillette telephoned the girl from the Comstock Hotel in Moorhead, and told her to "hurry up and catch that car for Moorhead; that he was at the Comstock, and for me to come there and have supper with him." The girl accepted the invitation and went to Moorhead. Meeting Gillette at the Comstock Hotel, they both went to the grill room and had supper at Gillette's expense. Both drank intoxicating liquor, and the girl became intoxicated. Gillette requested the girl to stay at the Comstock, but she refused. They both returned to the hotel at Fargo about midnight, and according to the girl's testimony Gillette had sexual relations with her that night. The girl had been living the life of a prostitute for about two years, and the house where she lived at Galesburg was adjudged to be a house of ill fame.

The girl testified on cross-examination that she really came to Fargo at the time in question to meet a man other than Gillette. The girl had visited Moorhead before for the purpose of eating and drinking. Gillette paid the girl $5 when he left the hotel in Fargo on February 5th.

[1] The charge as pleaded in the indictment seems to be a combination of the first and second clauses of section 3 of the act of Congress approved June 25, 1910 (36 Stat. 825). That section, so far as the charge against Gillette is concerned, reads as follows:

"That any person who shall knowingly persuade, induce, entice, * * * or cause to be persuaded, induced or enticed, * * * any woman or girl to go from one place to another in interstate or foreign commerce * * * for the purpose of * * * debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of * * * debauchery, or any other immoral practice, whether with or without her consent."

The indictment charges that Gillette—

"did unlawfully, knowingly, and willfully induce and entice, and cause to be persuaded, induced, and enticed, a certain girl, to wit, ———, to go from the city of Fargo to the city of Moorhead * * * for the purpose of debauchery and for an immoral purpose, to wit, that ——— aforesaid should engage in the practice of debauchery and illicit sexual relations with the said Arthur Gillette."

It thus appears that Gillette was charged with the offense described in the second clause of section 3. In other words, after charging him with inducing and enticing the girl to go to Moorhead, and causing her to be persuaded, induced, and enticed to go there, for the purpose of debauchery and for an immoral purpose, the pleader proceeds and defines what Gillette's particular purpose was in enticing the girl to go to Moorhead, and that purpose is alleged to have been that the girl should engage in the practice of debauchery and illicit sexual relations with Gillette. We refer to this language of the indictment for the reason that the statute describing the offense charged uses the words "with the intent and purpose," while the language of the first clause of the section simply uses the word "purpose." We do not stop to consider whether the word "purpose" is equivalent to the words "intent and purpose," but simply call attention to the fact that, in order to convict Gillette of the offense charged against him, the statute requires that the enticing of the girl to go to Moorhead should be with the intent and purpose, although the indictment says nothing about intent, other than what may be included in the word "purpose."

We are of the opinion that to engage in the practice of debauchery and illicit sexual relations is a different offense than the offense mentioned in the first clause of section 3. To engage in the practice of debauchery and illicit sexual relations would seem to indicate a continued course of illicit sexual relations, such as living with a woman in a state of concubinage; otherwise there would have been no necessity for using the language in the second clause of section 3, as the language used in the first clause would have been sufficient. The word "debauchery" is a word of broad signification. It includes all kinds of excessive indulgence in sensual pleasures of any kind, such as gluttony and intemperance; but the word is used in the statute with reference to immoral sexual relations.

[2] The question of the sufficiency of the evidence to warrant a conviction of the crime charged was not raised in the trial court; but the point is urged here, and we are cited to the following cases which authorize the investigation of such a question where the point has not been raised in the trial court: Wiborg v. United States, 163 U. S. 632, 16 Sup. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726; Crawford v. United States, 212 U. S. 183, 29 Sup. Ct. 260, 53 L. Ed. 465, 15 Ann. Cas. 392; Weems v. United States, 217 U. S. 349, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705. In this circuit the following cases are cited to the same effect: Williams v. United States, 158 Fed. 30, 88 C. C. A. 296; Keeley v. Mining Co., 169 Fed. 598, 95 C. C. A. 96; Humes v. United States, 182 Fed. 485, 105 C. C. A. 158; Pettine v. Ter. of N. M., 201 Fed. 489, 119 C. C. A. 581; Central Imp. Co. v. Cambria Steel Co., 201 Fed. 811, 120 C. C. A. 121; Sykes v. United States, 204 Fed. 909, 123 C. C. A. 205; Savage v. United States, 213 Fed. 31, 130 C. C. A. 1. It is a very unsafe practice to rely upon this court to consider a question not passed upon by the trial court. It is only in a clear case and to prevent a failure of justice that this court will interfere.

[3] We have carefully considered the evidence in the record, and

we are unwilling to affirm the judgment. Gillette's presence in Moorhead is fully accounted for upon other grounds than that of meeting the girl. The matter of dining had been mentioned in the morning. Gillette as the dinner hour approached, finding himself in Moorhead, telephoned the girl to come to the Comstock Hotel and stated for what purpose he desired her presence. When the girl arrived in Moorhead, the offense with which Gillette was charged was complete, providing the requisite intent and purpose was behind the journey. There was no locus pœnitentiæ for him after that. Wilson v. United States, 232 U. S. 563, 34 Sup. Ct. 347, 58 L. Ed. 728. His intent and purpose, of course, must be found from his acts, declarations, and conduct. There is no evidence to show that Gillette, at the time he asked the girl to come to Moorhead, had the intent and purpose that the girl should engage in the *practice* of debauchery and illicit sexual relations, and hence the charge made by the indictment was not proven.

Taking these facts into consideration, we are of the opinion that there is not substantial evidence to sustain the conviction.

Judgment reversed, and a new trial ordered.

HOOK, Circuit Judge (concurring). After giving the statute the very broadest construction, and after according to the verdict all the presumptions and advantages of rules of practice to which it is entitled, I am still unable to bring myself to assent to the conviction. In the opinion of the court the case is very properly stated in the aspect most unfavorable to the accused; but it is not improper to say further that, so to state it, it was necessary to sift it out of a mass of evasions and contradictions by a woman of confessed immoral character possessed of a motive of revenge.