### LOCKHART v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. March 12, 1920.)

No. 3306.

1. **Criminal law ⟂1166(9)—Denial of continuance not prejudicial, unless probably affecting result.**

The overruling of a motion for a continuance because of the absence of a witness is not prejudicial error, unless there is a strong probability that the absence ·of the witness substantially affected the result of the trial.

2. **Criminal law ⟂595(4)—Denial of continuance not abuse of discretion.**

On a trial under Espionage Act, tit. 1, § 3, as amended by· Act May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), the denial of a motion for a continuance because of the absence of a witness, who was abroad with the army, was not an abuse of discretion, where defendant was convicted only of the offenses committed after the witness went abroad.

3. **Criminal law ⟂1044, 1054(3)—Insufficiency of evidence, not urged below, cannot be considered.**

Defendant is not entitled to contend that there is no evidence to support a conviction of certain counts, where no motion was made for an instructed verdict, and no exception taken to the charge which submitted such counts.

4. **Criminal law ⟂935(3)—Absence of evidence cannot be first urged in motion for new trial.**

It is too late to raise for the first time on motion for a new trial the contention that there was no evidence to support a conviction on counts on which defendant was convicted.

5. **Criminal law ⟂1036(1), 1054(3)—In absence of objection evidence not reviewed, unless miscarriage of justice appears.**

In the absence of objection or exception properly raising the contention that there was no evidence to support the conviction, an appellate court will only look into the subject far enough to ascertain whether it is reasonably clear that there has been a miscarriage of justice.

6. **War ⟂4—Remarks of defendant held prohibited by Espionage Act and within power of Congress to prohibit.**

Remarks made by a man of means and standing, such as that he would kill his son if he enlisted, that he hoped the transport which took him across would be sunk, that he wanted Germany to win and the United States defeated, and hoped they would come over here and defeat us, that after the war he was going to dispose of everything he had and go to Germany, and help that country, that he would not buy war securities, because he would not give anything against Germany, and that there was no truth in what the papers were publishing about alleged victories over the Germans, must have had the direct harmful influence, which Congress had both the power and intent to prohibit.

7. **Criminal law ⟂1036(1), 1054(1)—Admission of evidence not reviewable without objection or exception.**

In a prosecution under Espionage Act, tit. 1, § 3, as amended by Act May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), defendant could not complain of the admission of testimony that he bought German war bonds in 1916, where no objection was made or exception reserved.

8. **Constitutional law ⟂90—War ⟂4—Espionage Act not unconstitutional.**

The provision of Espionage Act, tit. 1, § 3, as amended by Act May 16, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), making

---
⟂For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it an offense by words or acts to support and favor the cause of the enemy and oppose that of the United States, is not unconstitutional, as abridging freedom of speech or extending the crime of treason, especially as applied to an alien, who could not well be guilty of treason.

**9. Indictment and information ⪜87(8)—Allegation as to specific date not limited by general reference.**

Counts of an indictment under Espionage Act, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), alleging the making of certain statements on or about May 26, 1918, and at divers other dates between June 15, 1917, and October 18, 1918, were sufficient to charge an offense, though the statements were such as would not have constituted an offense prior to the amendment of May 16, 1918, as the general reference did not limit the particular reference.

**10. Indictment and information ⪜133(7)—Failure of indictment to aver date of offense was after passage of act held not ground for arrest of judgment.**

The failure of an indictment under Espionage Act, tit. 1, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c), to show that the statements charged were made after the amendment of May 16, 1918, was at most an irregularity to be taken advantage of by motion to quash, and which did not survive a verdict, so as to be raised by motion in arrest, particularly in view of Rev. St. § 1025 (Comp. St. § 1691), as to defects, and Judicial Code, § 269 (Comp. St. § 1246), as to new trials.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Clarence W. Sessions, Judge.

Andrew P. Lockhart was convicted of an offense, and he brings error. Affirmed.

C. S. Littleton, of Chattanooga, Tenn., for plaintiff in error.

W. T. Kennerly, U. S. Atty., of Knoxville, Tenn.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. On February 7, 1919, Lockhart was indicted for violation of the Espionage Act (Act June 15, 1917, tit. 1, § 3, 40 Stat. 219, as amended May 16, 1918 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c]). The first count alleged that "on or about May 26, 1918, and on divers other days between June 15, 1917, and October 15, 1918," he made and conveyed certain false reports and false statements, with intent to interfere with the operation and success of the military and naval forces of the United States, and to promote the success of its enemies. In the second count he is charged with speaking and publishing, at the times aforesaid, certain disloyal, scurrilous, and abusive language of the military and naval forces and with the intent to bring the same into contempt, scorn, contumely, and disrepute. The third count charges that, at the times aforesaid, he did, by his words and acts, support and favor the cause of the German government, and oppose the cause of the United States, in that he spoke and uttered the statements particularly specified in the first count, "which is here referred to and by reference made a part of this third count," and that he further said that the United States had no right to jump on Germany in the war; that the German people were the best people on earth and that he was for Germany in

said war, tooth and nail. It is evident that the first count charged an offense created by the Espionage Act as originally passed June 15, 1917, and that the second and third counts were intended to and did charge only offenses first created by the amendment of May 16, 1918, and depended, respectively, upon what may be called clauses 5 and 10 of the amended act. The record seems not to contain the verdict, but counsel agree that defendant was acquitted on the first count and convicted on the second and third. He was sentenced to the penitentiary for a year and a day.

[1, 2] He first complains that there was an abuse of discretion in denying his motion for a continuance. On February 17th he filed an affidavit showing that his son was a material witness, had enlisted in the army, had gone abroad in October, 1917, and was still abroad. The motion was denied, and the case went to trial on February 19th. There was no showing of an effort to get the son's testimony by deposition, or that the deposition or his testimony could be had before the next term. If we assume that the absence of this showing may be excused by the existing war situation, it would follow that the prosecution must be almost indefinitely suspended; but, aside from all other considerations, we could not think the overruling of such a motion prejudicial error, unless there was a strong probability that the absence of the witness had substantially affected the result of the trial. From the verdict of acquittal on the first count, it follows that defendant was convicted only for what he said after May 16, 1918; hence his son could, at the best, have been an important witness for him only with reference to those occurrences before October, 1917, which had no direct bearing on his guilt under the second and third counts, but bore only on the question of intent. In this situation it is clear that there was no abuse of discretion.

[3-6] Counsel strenuously urge that there is no evidence to support the conviction under the second and third counts. This conclusion is based on the contention that a careful analysis and study of the testimony show that whatever there was seeming to support these counts really has reference to a date prior to May 16, 1918, and therefore to a time when the alleged statements were not forbidden by the law. No motion was made for an instructed verdict, either at the conclusion of the government's evidence or at the conclusion of the case, and no exception whatever was taken to the charge, which carefully instructed that the defendant should not be convicted under either of these counts, unless he had made the statements alleged after the law was amended, and with the intent specified in the respective clauses of the amended act. The defendant, therefore, has no right to be heard in this court upon the contention that there was no evidence. His counsel, with the proof fresh in their minds, acquiesced in the implied ruling that the questions were for the jury. The point was first raised on motion for new trial, and that was too late. Moore v. U. S., 150 U. S. 57, 61, 14 Sup. Ct. 26, 37 L. Ed. 996. Lacking any objection or exception, an appellate court would, at most, look into this subject only far enough to ascertain whether it was reasonably clear that there

had been a miscarriage of justice; if so convinced, it might feel a duty to interfere.

While it is true that many of the statements were undoubtedly made before the amendatory act was passed, and that the evidence which locates important ones thereafter is somewhat vague and uncertain, and that, if the case stood alone upon those which are clearly and definitely given a later date, it would have a different aspect, at least in degree, yet the record tends to show a more or less consistent and continuous course of speech from the time before the United States entered the war until defendant's arrest in October, 1918, by which he supported and favored the cause of Germany and opposed that of the United States. Some of these would tend to show an offense under the act before amendment, and they might have been' without the particular intent charged in the first count; so that the verdict of not guilty under that count does not establish that the statements were not made. If the testimony for the government was true, he had said that he would kill his son if the latter enlisted in the army; that he hoped the transport which took him across would be sunk; that he hoped and desired Germany to win in the war and the United States to be defeated; that he hoped Germany would come over here and defeat us; that he hoped to see the day when Germany would come here and lick hell out of us; that after the war was over he was going to dispose of everything he had, and go over to Germany, and help that country out; that he would not buy war securities of the United States, because he would not give anything against Germany; and that he particularly stated, in July, 1918, to a young man who had been drafted, that they should not believe what the papers were publishing about the alleged victories over the Germans, as there was no truth in it. He was a man of some means and standing, and persistent talk of this kind could not fail to have the direct, harmful influence which Congress had both the power and the intent to prohibit. We do not see, in his conviction, any gross injustice which calls for interference on our own motion.

[7] He complains of the admission of testimony that in 1916 he bought German war bonds. The court instructed the jury, both when the testimony came in and during the general charge, that he could not be convicted for this purchase, but it could be considered only as showing his general and long-continued state of mind. Even if the admission were erroneous, we doubt that any substantial prejudice followed; but no objection was made or exception reserved. There is nothing to review on that point.

His counsel made a motion in arrest of judgment, which was overruled, and exception saved. We therefore must consider whether counts 2 and 3 of the indictment, for any substantial reason alleged in the motion, failed to state a punishable offense created by a valid law.

[8] Clause 10 is attacked as unconstitutional, because it extends the crime of treason, and because it abridges the freedom of speech. These contentions must be overruled, for the reasons stated in our opinions in the Wimmer Case, 264 Fed. 11, —— C. C. A. ——, and Schoborg Case, 264 Fed. 1, —— C. C. A. ——, this day filed. We

264 F.—2

think, as we have stated, that the things charged against him substantially tended to cause a "clear and present danger." Further, as to treason, Lockhart was an alien, and could not well be guilty.

[9, 10] Finally, it is said that counts 2 and 3 did not allege that the statements were made after May 16, 1918, and, therefore, did not allege any crime. By its incorporation of the first count, the allegation is that the statements were made "on or about May 26, 1918, and at divers other dates between June 15, 1917, and October 18, 1918." If the allegation were only of utterance between the two extreme dates named, a more serious question would arise—one which we need not decide; but this latter allegation is surplusage. The reference to "on or about May 26, 1918," if it stood alone, would be a sufficient allegation to show a crime under the law of May 16, and would justify the admission of all the evidence which was received relating to dates after May 16. We do not see how the unnecessary allegation of earlier or later statements can neutralize the sufficient allegation. Of the two, the one with reference to May 26 is the more particular, and the general does not limit the particular, but rather the contrary. This defect in the indictment is, at most, an irregularity, which should be taken advantage of by motion to quash at the first opportunity, and does not survive a verdict so as to be raised by motion in arrest, particularly in view of the R. S. § 1025 (Comp. St. § 1691) and the present form of section 269 of the Judicial Code (Comp. St. § 1246). Ledbetter v. U. S., 170 U. S. 606, 613, 18 Sup. Ct. 774, 42 L. Ed. 1162; Frisbie v. U. S., 157 U. S. 160, 164, 15 Sup. Ct. 586, 39 L. Ed. 657; West v. U. S. (C. C. A. 6) 258 Fed. 413, 415, —— C. C. A. ——.

The judgment must be affirmed.

