## EDWARDS v. UNITED STATES (two cases).

(Circuit Court of Appeals, Eighth Circuit. July 23, 1925.)

Nos. 6791, 6792.

**1. Criminal law ⟨⟩1048—Assignments of error on rulings not excepted to are unavailing.**

Assignments of error, raising questions based on rulings not duly excepted to, are unavailing.

**2. Criminal law ⟨⟩1129(3)—Assignment that court committed error of law at trial held too general, and not to conform to court rules.**

Assignment that court committed error of law in trial of case is too general to cover points attempted to be argued under it, and does not conform to rules of Circuit Court of Appeals.

**3. Criminal law ⟨⟩901—Motion to direct verdict at close of government's case waived by introducing evidence.**

Motion to direct verdict for lack of evidence at close of government's or plaintiff's case is waived by defendants proceeding to introduce evidence.

**4. Criminal law ⟨⟩1038(1), 1056(1)—Defendants failing to object or except to instructions cannot urge alleged errors therein.**

Defendants having made no objections to instructions or excepted to any part thereof cannot urge on appeal alleged errors therein.

**5. Criminal law ⟨⟩1044—Method to require review of sufficiency of evidence is motion for directed verdict on that ground.**

The method to require review of sufficiency of evidence by appellate court is to move at conclusion of all the evidence for directed verdict on that ground.

**6. Criminal law ⟨⟩935(3)—Sufficiency of evidence not first urged in motion for new trial.**

Sufficiency of evidence to sustain verdict cannot first be urged in motion for new trial.

**7. Criminal law ⟨⟩1036(8)—Sufficiency of evidence, not being challenged at conclusion of trial, not reviewed.**

Where there was no challenge to sufficiency of evidence at conclusion of case, question of sufficiency thereof is not presented for review.

**8. Criminal law ⟨⟩1028—Code does not require review of questions not properly preserved at trial.**

Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. Ann. Supp. 1919, § 1246), does not require appellate court to pass on questions which have not been properly preserved in trial court.

**9. Criminal law ⟨⟩1036(8)—Circuit Court of Appeals has inherent power to consider sufficiency of evidence to sustain verdict of guilty, where life and liberty involved.**

Especially in cases where life and liberty are involved, the United States Circuit Court of Appeals has inherent power to consider sufficiency of evidence to sustain a verdict of guilty, even where question is not properly presented, if court is satisfied there has been miscarriage of justice.

**10. Army and navy ⟨⟩20—Evidence held insufficient to sustain conviction of failure to register under Selective Draft Act; "legal residence."**

Evidence being as consistent with innocence as with guilt, and presumption of continued domicile coming in conflict with presumption of innocence, *held* insufficient to sustain conviction of defendants for willfully failing to present themselves for registration in named coun-

ty at time fixed by President's proclamation as provided by Selective Draft Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k); term "legal residence" being used therein in sense of domicile.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Legal Residence.]

**11. Criminal law ⊜=562—Conviction not sustained, if evidence is as consistent with innocence as with guilt.**

If evidence taken as a whole is as consistent with innocence as with guilt, conviction should not be sustained.

**12. Citizens ⊜=13—In absence of statutory inhibition, citizen may give up citizenship and move to other country.**

In absence of statutory inhibition, a citizen of the United States has right to give up his citizenship and move to another country.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Clarence Edwards and Eugene M. Edwards were convicted on separate informations of failure to present themselves for registration under the Selective Draft Act, and they bring error. Reversed and remanded.

J. Q. A. Harrod, of Oklahoma City, Okl., for plaintiffs in error.

W. A. Maurer, U. S. Atty., and Roy St. Lewis, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before SANBORN and KENYON, Circuit Judges, and SCOTT, District Judge.

KENYON, Circuit Judge. Plaintiffs in error (herein designated as defendants) were tried in the District Court of the United States for the Western District of Oklahoma upon separate informations, charging each one of them with failure to present himself for registration in Grant county, Okl., on June 5, 1917, under the provisions of the Selective Draft Act (sections 2044a–2044k, Comp. St. 1918, Comp. St. Ann. Supp. 1919), and alleging that their permanent home and actual place of legal residence at the time for registration was in that county, and that they were not temporarily absent therefrom; the cases being consolidated for the purpose of trial.

[1] Both defendants were convicted and sentenced to six months in jail. Two of the eight assignments of error, the fifth and eighth, are argued. The condition of this record as to presentation of the errors alleged challenges our attention. None of the assignments of error raise questions based on rulings of the trial court duly excepted to. This court has repeatedly held that such assignments are unavailing. Short v. United States, 221 F. 248, 137 C. C. A. 104; Hoskins v. United States (C. C. A.) 4 F.(2d) 804; Feinberg v. United States (C. C. A.) 2 F.(2d) 955.

[2] The eighth assignment is as follows: "For the reason that the court committed error of law in the trial of said cause." This assignment is entirely too general to cover the points attempted to be argued under it, and does not conform to the rules of this court. Baggs v. Martin et al., 108 F. 33, 47 C. C. A. 175; Harrington et al. v. United States (C. C. A.) 267 F. 97; McCabe & Steen Co. v. Wilson, 209 U. S. 275, 28 S. Ct. 558, 52 L. Ed. 788. Passing that question, however, we may say that counsel under this assignment argues: First, that the demurrer filed at the close of the government's evidence should have been sustained, and that it was error in the court not so to do; second, that certain statements in the instructions of the court to the jury were erroneous. The demurrer was based on lack of evidence to prove that defendants were residents of their respective townships on the dates charged in the information; in other words, that the evidence was not sufficient to sustain the charge.

[3] If assignment of error No. 8 was specific enough to cover this question, nevertheless it is the well-established rule that a motion to direct a verdict on the ground of lack of evidence at the close of the government's, or plaintiff's, case (and that is what this demurrer amounted to) is waived by defendants proceeding to introduce evidence. Collins v. United States, 219 F. 670, 135 C. C. A. 342; Short v. United States, 221 F. 248, 137 C. C. A. 104; Steffen v. United States (C. C. A.) 293 F. 30; McCabe & Steen Construction Co. v. Wilson, 209 U. S. 275, 28 S. Ct. 558, 52 L. Ed. 788; Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 S. Ct. 685, 30 L. Ed. 740.

[4] Counsel also seek in the same assignment of error to present alleged erroneous instructions. There are some portions of the instructions not entirely clear, and, had the court's attention been called thereto, could have been easily clarified. At the close of the instructions the court asked if there were any exceptions, to which counsel for defendants replied, "No, sir." It is evident that, having made no objections to the instructions of the court or excepted to any part thereof, defendants are not in position

here to urge alleged errors therein. Savage v. United States, 213 F. 31, 130 C. C. A. 1; Hickory v. United States, 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170; Stewart v. Wyoming Ranche Co., 128 U. S. 383, 9 S. Ct. 101, 32 L. Ed. 439.

[5] Assignment of error No. 5 is that the verdict of the jury, upon which the judgment of the court was based, was contrary to the evidence. As to this we find the record in substantially the same condition as to the instructions. The question of sufficiency of the evidence was raised at the close of the government's case. It was waived by the defendants proceeding with their evidence, and no motion was made at the close of all the testimony for an instructed verdict on any ground. Counsel for defendants impliedly consented that the questions involved were for the jury. This court, as well as other courts, has many times held that the method to require a review of the sufficiency of the evidence by an appellate court is to move at the conclusion of all the evidence for a directed verdict on that ground.

In the late case of Feinberg v. United States (C. C. A.) 2 F.(2d) 955, 956, Judge Munger, speaking for the court, says: "It is now the established rule, notwithstanding the provisions of section 269 of the Judicial Code, that the appellate court will not decide the question of the sufficiency of the evidence in the absence of a request for an instructed verdict, unless it is satisfied that there has been a miscarriage of justice."

[6, 7] Defendants do not even raise in the motion for new trial the question of the sufficiency of the evidence. That would have been too late, as far as this court is concerned; but the trial court might then have had an opportunity to pass on the question. There being no challenge to the sufficiency of the evidence in any way at the conclusion of the case, the long-settled practice of this court is that the question is not here for review. Bonner v. United States (C. C. A.) 275 F. 614; Trope v. United States (C. C. A.) 276 F. 348; Gillette v. United States, 236 F. 215, 149 C. C. A. 405; Prosser et al. v. United States (C. C. A.) 265 F. 252. The condition of the record in this court, barren of questions properly preserved for review, as we have pointed out, precludes any right on the part of defendants to insist that the court shall review the alleged errors in the case.

[8] Defendants are not aided by amended section 269 of the Judicial Code (Comp. St. Ann. Supp. 1919, § 1246), for that section does not require the appellate court to pass on questions which have not been properly preserved in the trial court. Short v. United States, 221 F. 248, 137 C. C. A. 104; Robilio et al. v. United States (C. C. A.) 291 F. 975; Feinberg v. United States (C. C. A.) 2 F.(2d) 955.

[9] There exists in this court, however, especially in cases where life and liberty are involved, an inherent power to consider the sufficiency of the evidence to sustain a verdict of guilty, even where the question is not properly presented to the trial court, if this court is satisfied there has been a miscarriage of justice. If the evidence is convincing that defendants are guilty, then there is no reason ordinarily for the court to exercise such power. This court has in a number of instances, where life and liberty of an individual were at stake, considered the sufficiency of the evidence to warrant conviction of the crime charged, although the question was not properly raised in the trial court; Gillette v. United States, 236 F. 215, 149 C. C. A. 405, being a case in point.

In Sykes v. United States, 204 F. 909, 913-914, 123 C. C. A. 205, 209 (citing many cases), this court said: "To escape from the effect of this conclusion, counsel challenge our attention to the fact that no request for a peremptory instruction to return a verdict for Sykes was made at the trial, and invoke the conceded rule that the court may not review the existence of evidence to sustain a verdict, in the absence of a request after the close of the evidence for a peremptory instruction. Rimmerman v. United States, 186 F. 307, 311, 108 C. C. A. 385. But there is an exception to this general rule, which has been made to prevent just such gross injustice as would result from the punishment of the defendant Sykes upon the evidence which has been recited. It is that in criminal cases, where the life, or, as in this case, the liberty, of the defendant is at stake, the courts of the United States, in the exercise of a sound discretion, may notice such a grave error as his conviction without evidence to support it, although the question is presents was not properly raised in the trial court by request, objection, exception, or assignment of error."

In Robins v. United States (C. C. A.) 262 F. 126, 127, the court took the ground that, where the sufficiency of the evidence was not questioned in the trial court, it could not be urged here, "unless in our discretion we decide so to do." See also Humes v. United States, 182 F. 485, 105 C. C. A. 158; Savage v. United States, 213 F. 31, 130 C. C. A. 1; Feinberg v. United States (C. C. A.)

2 F.(2d) 955. In other jurisdictions, see Lockhart v. United States (C. C. A.) 264 F. 14; Quarles v. United States (C. C. A.) 274 F. 203; De Jianne v. United States (C. C. A.) 282 F. 737; Thompson v. United States (C. C. A.) 283 F. 895; Bilboa et al. v. United States (C. C. A.) 287 F. 125; Robilio et al. v. United States (C. C. A.) 291 F. 975; Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185.

The statute for the violation of which these defendants were convicted was a war measure. The informations were not found until two years, and the case not tried until six years, after the war had terminated.

[10] Regardless of the condition of the record, precluding any right of defendants to demand a review of alleged errors, and independent of any provision of amended section 269 of the Judicial Code, we have, in review of the somewhat extraordinary circumstances of these cases, exercised our inherent power to review the entire record, to determine whether or not there is such lack of evidence as to make the conviction of defendants a miscarriage of justice.

[11] If the evidence, taken as a whole, is as consistent with innocence as with guilt, then the conviction should not be sustained. In Wright v. United States, 227 F. 855, 857, 142 C. C. A. 379, 381, speaking of the defendant, this court said: "The legal presumption was that he was innocent of that crime until he was proved to be guilty beyond a reasonable doubt. The burden was upon the government to make this proof, and evidence that is as consistent with innocence as with guilt is insufficient to sustain a conviction. Unless there is substantial evidence of facts which exclude every other hypothesis but that of guilt, it is the duty of the trial court to instruct the jury to return a verdict for the accused; and where all the substantial evidence is as consistent with innocence as with guilt, it is the duty of the appellate court to reverse a judgment of conviction." See, also, Wiener et al. v. United States (C. C. A.) 282 F. 799; Turinetti v. United States (C. C. A.) 2 F. (2d) 15.

The nature of the alleged offense is important to be considered in connection with the question of sufficiency of evidence. The crime charged against defendants was willfully failing to register on June 5, 1917, in accordance with the proclamation of the President of the United States under what was commonly known as the "Selective Draft Law." This act was passed by the Congress and signed by the President May 18, 1917. The act provides that the draft shall be based upon liability to military service of all male citizens or male persons not alien enemies, who have declared their intention to become citizens, between the ages of 21 and 30 years, both inclusive. Under the act all male citizens between these ages were required to present themselves for registration at such time and place as might be provided in the proclamation of the President of the United States.

The informations charge that these defendants had their permanent home and actual place of legal residence, from which they were not temporarily absent, in Bryan township, Grant county, state of Oklahoma. The court analyzed the situation in its instructions to the jury as follows: "The facts essential to the guilt of the defendants in each case are, first, that he was on May 18th, 1917, when the Selective Service Law was enacted, between 21 and 30 years of age; second, that he was on that date a resident of Grant county, Okl.; third, that he failed to register for military service on June 5, 1917."

It is admitted in the record that defendants were of the proper age to require registration and that they failed to register. That left the second proposition cited by the court as the real controversy, viz. whether or not defendants on the 18th day of May, 1917, were actual, legal residents of Grant county, Okl. If these defendants on that day were citizens of the United States and had their legal residence in Grant county, Okl., it was their duty to present themselves for registration on the 5th day of June, 1917. This they did not do.

It is the contention of the government that defendants left that community after the draft law was passed and went to Canada in order to evade military service, while it is the contention of defendants that in good faith, before the passage of said act by the Congress, they abandoned their legal residence or domicile in the United States and moved to Canada for the purpose of making that their future home. Defendants were not on trial for having left the country with intent to evade going to war. Nor were they charged with violating the act by not registering in the manner provided for those temporarily absent. The crime charged was willfully failing to present themselves for registration in Grant county, Okl., at the time fixed by the proclamation of the President of the United States, as provided in said Act of May 18, 1917.

Before considering the evidence, we refer briefly to some phases of the law. The terms "citizens" and "legal residence" are used in the statute under which the informations are brought, the latter in the sense, we think, of domicile. The place of a party's domicile is the place of his citizenship. Delaware, L. & W. R. Co. v. Petrowsky, 250 F. 554, 162 C. C. A. 570; Harding v. Standard Oil Co. (C. C.) 182 F. 421. The term "residence" may mean more or less than "domicile." Many states by statute make residence and domicile identical, although they are distinct terms. The informations refer to the "actual place of legal residence." That Grant county, Okl., was the domicile of defendants up to at least the 1st day of April, 1917, is unquestionably established by the record. That domicile would be presumed to continue until a new one was acquired. Likewise the presumption is in favor of the original as against an acquired domicile—a domestic rather than a foreign one. The controlling question is: Had defendants changed their domicile from Grant county, Okl., to Canada, before May 18, 1917, the date the act was passed? It is not always easy to determine just where a person's domicile is, or just when a change thereof is effected. The question has been productive of much conflict of law.

The Supreme Court in speaking of domicile in Mitchell v. United States, 88 U. S. (21 Wall.) 350, 353 (22 L. Ed. 584) says: "A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged, the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired, the old one remains." That court has a number of times indorsed the words of Mr. Dicey in his work on Conflict of Laws, in speaking of the essentials of a new domicile: " 'The absence of any present intention of not residing permanently or indefinitely in' the new abode." Williamson v. Osenton, 232 U. S. 619, 34 S. Ct. 442, 58 L. Ed. 758; Gilbert, Administrator v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360.

In Story's Conflict of Laws (7th Ed.) §

46, p. 41, the matter is put as follows: "If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is to be deemed his place of domicile, notwithstanding he may entertain a floating intention to return at some future period." "The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely."

A good definition of domicile is that in Putnam v. Johnson, 10 Mass. 488: "The habitation fixed in any place, without any present intention of removing therefrom." The American Law Institute, seeking to restate and simplify the law, defines domicile as follows: "Domicile is the place with which a person has a settled connection for legal purposes, either because his home is there or because it is assigned to him by the law."

It was pointed out in The Venus, 8 Cranch, 253, 279, 3 L. Ed. 553, that the chief point to be considered is the animo manendi; that the length of time of residence was not important, but that if the intention of removal was to make a permanent settlement or for an indefinite time, a new right of domicile was acquired. Of course, intention is not sufficient for change of domicile. There must be residence in the proposed new domicile, but if the intention exists the residence is not necessarily for any extended period of time. A mere change of abode may not constitute a change of domicile. Whether it be the latter depends upon the intention. "The intention and the act must concur, in order to effect such a change of domicile as constitutes a change of citizenship." Morris v. Gilmer, 129 U. S. 315, 328, 9 S. Ct. 289, 293 (32 L. Ed. 690).

We have referred to some of the authorities construing the terms "domicile," "residence," "change of domicile," etc., to illustrate the difficulties surrounding the subject and the fine lines eminent courts have drawn in dealing therewith. It is ofttimes a matter of great difficulty, as we have before pointed out, to determine one's domicile or change of domicile; the intention of the party playing such large part therein. That there is difficulty in convicting where alleged crimes are based on domicile or change thereof is no reason for overriding fundamental safeguards of the law.

Is the evidence as consistent with the theory that defendants abandoned their citizen-

ship in the United States and their domicile in Grant county, Okl., and went to Canada with the intention of making it their future domicile, as that they left temporarily and went to Canada with no intention of making that their permanent home, but merely for the purpose of escaping military service and with the intention of returning to the United States after the war? There are suspicious circumstances appearing in this record: The fact that Clarence Edwards left his wife and child in this country when he went to Canada; that defendants left such a short period of time preceding the passage of the Act of May 18, 1917, and at a time when there must have been more or less talk of the probability of a draft for military service; the fact that they returned to this country after the war, and never went to Grant county to see their parents. The leaving of the wife and child, ordinarily a strong circumstance to show that domicile has not been abandoned, is explained by defendant, Clarence Edwards, as due to the sickness of the infant child. The suspicious circumstance of returning to the country after the close of the war is weakened somewhat by the fact that they did not return until two years thereafter. On the other hand, the testimony shows that prior to April 1, 1917, they had talked with witnesses about going to Canada. Defendant, Clarence Edwards, who was married, broke up his housekeeping, sold his household furniture, quit farming, and, according to the evidence of a number of witnesses, left on the 2d of April, 1917, for Canada. He returned and executed a chattel mortgage on the 15th day of May, and then went back to Canada and remained there for four years. Defendant, Eugene Edwards, had no independent home of his own in Grant county, having lived with his father. He went to Canada about the 1st of April and did not return until long after the close of the war. Defendants sold all their property in the United States and purchased property in Canada, and settled down there to live; Clarence taking his wife and child to a home which he had prepared for them in Canada; Eugene marrying a Canadian girl and settling in a home of his own. They registered under the Canadian Man Power Act.

[12] They had a right to change their domicile to Canada before the passage of the Act of May 18, 1917, even if they did so with knowledge that the Selective Draft Act was to be passed. Their patriotism might well be questioned, but the law does not ordinarily concern itself with the motive actuating change of domicile. In the absence of statutory inhibition a citizen of the United States has the right to give up his citizenship and move to another country. There are instances of American citizens expatriating themselves to escape payment of taxes; others to marry broken-down scions of royalty and exchange inherited fortunes for titles of supposed nobility.

It appearing without question that defendants' domicile was in Grant County, Okl., prior to April 1, 1917, there would be a presumption that it continued in the absence of circumstances showing the contrary. Such circumstances do appear here and such presumption comes into conflict with the presumption. of innocence—one of greater weight than that of continued residence. The presumption, however, of continued residence, evidently carried the case to the jury.

From a careful consideration of this record we are not satisfied as to the guilt of the defendants. We are satisfied, however, that all the circumstances taken together, as disclosed by the record, are as consistent with innocence as with guilt. Consequently the government did not prove a case of guilt beyond a reasonable doubt. The evidence was insufficient to support the verdict.

The judgment as to each defendant is reversed, and the cases are remanded.