### RIBASTE et al. v. UNITED STATES.
### No. 8842.

Circuit Court of Appeals, Eighth Circuit.
Oct. 6, 1930.

Horace Guffin and W. G. Lynch, both of Kansas City, Mo., for appellants.

William L. Vandeventer, U. S. Atty., and Claude E. Curtis, Asst. U. S. Atty., both of Kansas City, Mo.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

Charles Ribaste and Henry Bono were convicted on an indictment of two counts, one charging the manufacture of intoxicating liquor and the other the possession of the same liquor in violation of the National Prohibition Act (27 USCA). The parties will be referred to as they appeared in the lower court.

The sufficiency of the indictment was not challenged in the lower court, nor is it questioned here. When the government rested its case the defendants moved the court to direct the jury to return verdicts of not guilty, which motion was denied and exception taken. They declined to introduce any testimony, and on this appeal charge that the court erred in denying their motion. Since the argument of the case in this court the defendant Bono has filed a written discharge of his counsel and a request for a dismissal of the appeal as to him. The appeal as to Bono is therefore dismissed, and as to him the case will be given no further consideration except as it may be necessary in considering the appeal of the defendant Ribaste.

The evidence of the government tended to show the following facts as to the defendant Ribaste: On the 5th of August, 1929, Frank Seaton, a prohibition agent, went to a place about two miles southwest of Martin City, Jackson county, Mo. In going to this place he drove southerly along Holmes street, Martin City, running north and south, until he came to a country road running east and west. Turning into this road, he proceeded

west about one-half a mile to a cottage on the south side of the road. As he approached this cottage, he detected the odor of mash and observed a small building about one hundred yards southwest from the cottage, and as he approached this building he detected a still stronger odor of mash. He did not at that time enter either the cottage or this small house back of it, but on the following day, with two other prohibition agents, Lashbrook and Fisher, returned to this same place. At this time they found in the small building a still set up and in operation. Whisky was running out of the still into a five-gallon glass jug, and there was a coke fire under the still. They also found in the still house about sixty-five gallons of whisky and fifty gallons of mash, a straw hat, and a pair of shoes. While these agents were at the still house they saw no one, either at or about the premises. After finding the still, they returned to their car which they turned around on the country road and started east, retracing their way toward Holmes street. While they were thus returning, after having driven about a quarter of a mile, one of them noticed two men in a pasture north of the road, walking generally in a southwesterly direction. At this time the men were about seventy-five yards north of the road and about five hundred yards northeasterly of the still house. The agents were unable to say whether these men were going in the direction of the still house or toward the first house east of the still house, or whether they were just going to the road. At this point Lashbrook and Fisher got out of the car, and Seaton continued to drive toward Holmes street. At the intersection of Holmes street and the country road, he turned his car about and started back over the same road, but parked his car not far from the intersection, behind some trees and bushes. In about ten minutes he observed one of the two men mentioned before as having been seen in the pasture north of the road walking east on the country road toward Holmes street. Seaton drove up to meet him, but lost sight of him due to brush and undergrowth in one of the forks of the road. This man later was identified as the defendant Ribaste. He had not had time to go to the still between the time he was seen in the pasture north of the road and the time Seaton saw him going east on the country road. In the meantime Lashbrook and Fisher had returned to a point about one hundred and fifty yards from the still house, where they concealed themselves. In a short time they saw the defendant Bono coming across the pasture in a southwesterly direction, and later arrested him.

The foregoing related events took place between 3 p. m. and 6 p. m. on the afternoon of the 6th. Ribaste was not again seen until about 8 o'clock. After the arrest of Bono the prohibition agents called deputy prohibition administrator Lane, and while he was at what is referred to as the Wheeler house, located north of the country road and between a quarter and a half mile easterly from the cottage that has been referred to, located on the south side of the road, he noticed Ribaste rise out of the bushes near the house, and he (Ribaste) came to the house "and hollered for Bugs" (Bugs being a nickname for a Mr. Dick). He was at that time wearing a white shirt. There was evidence tending to show that the shoes of both Bono and Ribaste smelled of mash, but there was no mash on their clothing; that a pair of shoes found in the still house seemed to be of the peculiar kind Ribaste was wearing; that Ribaste when arrested wore different clothing than when agent Seaton first saw him in the afternoon of that day. When arrested Ribaste was found to have $700 in paper money on his person. There were some statements made by Ribaste upon his arrest, but they had no bearing upon his alleged connection with the manufacture or possession of the intoxicating liquor. The premises on which the still was located and the liquor found belonged to a man by the name of Wheeler, and the house in which the still was located was constructed by a carpenter by the name of Dick, and the evidence shows that Wheeler stated that the premises were leased to some woman under a contract of purchase.

It will thus be seen, and it is conceded by counsel for the government, that the evidence against Ribaste was wholly circumstantial. The facts and circumstances proved and relied upon by the government to sustain Ribaste's conviction must therefore not only be consistent with his guilt, but must be inconsistent with his innocence. Union Pacific Coal Co. v. United States (C. C. A.) 173 F. 737; Edwards v. United States (C. C. A.) 7 F.(2d) 357; Salinger v. United States (C. C. A.) 23 F.(2d) 48; Spalitto v. United States (C. C. A.) 39 F.(2d) 782; Grantello v. United States (C. C. A.) 3 F.(2d) 117.

Confessedly, there are some suspicious circumstances proven in this case, noticeable among which is the condition of the defendant's shoes, but mere suspicion is not sufficient to prove the guilt of a defendant beyond

a reasonable doubt. There is no evidence in the record to indicate that the odor attributed to the defendant's shoes came from or had any connection with the manufacture of the liquor described in the indictment. There is no evidence that he either manufactured or was ever in possession of the liquor charged in the indictment. The real estate, including the building in which the still was found, belonged to Wheeler; the building was constructed by Dick, Wheeler's employee, and had apparently been specially built for still purposes. These circumstances would seem to present a stronger case against Wheeler than against Ribaste. Ribaste was not found in possession of the premises, nor was he observed nearer thereto than five hundred yards prior to the time of his arrest. The premises, according to government's witness Wheeler, were in the possession of some woman, whose name or whereabouts is not shown, under a contract of purchase. The circumstances proven in this case are not inconsistent with the innocence of the defendant Ribaste in so far as the crime charged in the indictment is concerned.

In Day v. United States, 37 F.(2d) 80, 82, there was presented to this court the question as to whether or not probable or reasonable cause to believe a party engaged in the commission of a crime existed, while the instant case involves the question as to whether the circumstances proved establish the guilt of the defendant beyond a reasonable doubt. In the course of the opinion in that case, written by Judge Kenyon, it is, among other things, said:

"The circumstance of appellant being in the yard and starting to unload sugar at 9:30 at night was undoubtedly an unusual and suspicious circumstance. He might have been unloading the sugar for a perfectly legitimate purpose, or have been a teamster with no knowledge that a still was being operated, or he might have been taking the sugar to the storeroom or other apartments. There were four apartments in the second story of this building. The first story was used as a storeroom. There were stills in only two of the apartments. It is conceivable, outside of the knowledge imparted by these papers taken from him, that appellant might have known nothing of the still and had no connection with it. It cannot be assumed that mere possession of sugar is any proof that it is to be used in an illicit still. It could hardly be assumed that a man driving a truck that had sugar upon it, and driving it within the sphere where officers smelled fermented mash, was engaging in the commission of a crime in the presence of the officer. Appellant was not found in any close connection with the operation of the stills. The mere transportation of the sugar was not a crime. There was no intoxicating liquor in his possession. It is not claimed he was participating in any conspiracy. * * * There is not one word of evidence here, outside of that objected to, to show appellant had any charge of the premises or was connected with them in any capacity."

The circumstances surrounding the arrest of Ribaste were isolated circumstances and did not connect up with anything that had gone before in connection with him. The last seen of him before his arrest was by Seaton, when Ribaste disappeared at the junction of Holmes street and the country road. When arrested Ribaste was wearing different clothing than when last seen, thus refuting the inference sought to be drawn by the government that he was hiding in the brush all that day from the time of his disappearance in the afternoon about 3:30, until 8 at night. While a jury may properly be permitted to presume the existence of a fact in some cases from the existence of other facts which have been proved, yet the presumed fact must have an immediate connection with or relation to the established fact from which it is inferred. A presumption must be based upon a proved fact and not upon another presumption. Wagner v. United States (C. C. A.) 8 F.(2d) 581. Attorneys for the government with commendable frankness in their brief say: "We frankly state that we are in doubt as to whether the evidence is sufficient."

We are of the view that the facts and circumstances proved fall far short of establishing the guilt of this defendant beyond a reasonable doubt, and, hence, the court erred in not having directed a verdict of not guilty as to him. The judgment of conviction as to this defendant must be set aside, the case reversed and remanded, with directions to grant the defendant Ribaste a new trial, and it is so ordered.